## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WIRELESS MEDIA INNOVATIONS, LLC<br><br>            Plaintiff,<br><br>v.<br><br>MAHER TERMINALS, LLC<br><br>            Defendants.<br><br>WIRELESS MEDIA INNOVATIONS, LLC<br><br>            Plaintiff,<br><br>v.<br><br>GLOBAL TERMINAL & CONTAINER<br>SERVICES, LLC. | Civil Action No. 14-7004; 14-7006 (JLL)<br><br>**OPINION** |

**LINARES, District Judge.**

This matter comes before the Court by way of TWO motions to dismiss Plaintiff Wireless Media Innovations, LLC ("Plaintiff")'s Complaints in two separate actions against Defendant Maher Terminals, LLC ("Maher") and Defendant Global Terminal & Container Services, LLC ("Global")(Collectively "Defendants") under Federal Rule of Civil Procedure 12(b)(6). (CM/ECF No. 14; No. 14). No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. The Court has considered the submissions and arguments made in support of and in opposition to the instant motions. For the reasons set forth below, Defendants' motions are **GRANTED.**

### I. BACKGROUND

Plaintiff is a limited liability company organized under the laws of Delaware. (Maher Comp. at ¶¶ 1-2). Plaintiff is the owner of two patents covering certain systems and methods relating to the monitoring of shipping containers. (*Id.* at ¶¶ 7-9). The Patents are U.S. Patent Number 6,148,291 (" '291 Patent") and U.S. Patent 5,712,789 (" '789 Patent"). Maher is a limited liability corporation organized under the laws of Delaware, with its principle place of business in New Jersey. (*Id.* at ¶ 2). Global is a limited liability corporation organized under the laws of Delaware, with its principle place of business in New Jersey, as well. (Global Comp. at ¶ 2). In nearly identical Complaints, Plaintiff alleges that Defendants operate at least one terminal operating system and operative methods associated therewith to monitor the locations and load statuses of containers at Defendants' respective terminals. (Maher and Global Comp. at ¶ 11). Plaintiff alleges that by monitoring the containers, Defendants infringed and continue to infringe on one or more claims of Plaintiff's '291 Patent and Plaintiff's '789 Patent. (*Id.* at ¶ 12). Plaintiff has pled one count of infringement for each of its two Patents, against each Defendant, respectively. (*Id.* at ¶¶ 10-17).

Defendants filed two separate motions to dismiss asserting that Plaintiff's Patents are ineligible for patent protection under 35 U.S.C. § 101 because they are directed at an abstract idea. The principal issues are whether the Court can assess invalidity under § 101 before formal claim construction, and, if so, whether the Patents are, in fact, ineligible for patent protection according to the abstractness test articulated in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347 (2014).

## II. LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

2

678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *Id.*; *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

### III. DISCUSSION

**A. Motions Before the Court**

#### 1. Defendants' Motions

Defendants contend that dismissal of Plaintiff's Complaints is warranted on the following grounds: (1) The question of Patent eligibility under 35 U.S.C.§ 101 can and should be decided at the Pleading stage on a motion to dismiss; (2) In view of *Bilski, Mayo,* and *Alice*, the '789 and '291 Patents claim ineligible subject matter; and (3) in the alternative, Plaintiff's Complaints should be dismissed under Fed. R. Civ. P. 12(b)(6) for failing to comply with *Twombly* and *Iqbal.*

#### 2. Plaintiff's Opposition

Plaintiff rebuts Defendants' arguments on the following grounds: (1) Defendants' motions are premature; (2) The Patents in suit claim patent-eligible subject matter; and (3) Plaintiff's Complaints satisfy the pleading standard.

**B. The Patents**

3

The '789 Patent entitled "CONTAINER MONITORING SYSTEM AND METHOD", was filed on August 28, 1995 and was issued on January 27, 1998. The abstract to the '789 patent states:

> A container monitoring system and method tracks location and load status of shipping containers within a defined premises and generates container status reports for customers receiving containers, suppliers or shippers of goods, and container carriers. Carrier and container identifiers are used to track and monitor movements and status of each container from a point of departure to a final destination and return. A combined computer and telecommunications system is also disclosed for executing the tasks of the container monitoring system.

The '291 Patent entitled "CONTAINER AND INVENTORY MONITORING METHODS AND SYSTEMS", was filed on January 26, 1998 and was issued on November 14, 2000. The application for the '291 patent was "related to" the '888 application, on which the '789 Patent was granted. The abstract to the '291 patent states:

> Container and inventory monitoring methods and systems provide detailed logistical control of containers, shipping racks and resident and in-transit inventory. The methods and systems create and maintain accurate real-time records of the location, movement and load status of containers, racks and inventory within the facility boundaries and between facilities such as factories, assembly plants, warehouses, shipping yards and freight switching facilities. Detailed data on container switching, unloading and loading activity is recorded and archived. A virtual inventory accounting is provided by tracking from customer release orders to supplier shipments and rack returns.

The following claims are representative of the patents and read as follows:

Claim 1 of the '789 patent recites:

> 1. A container monitoring system for accumulating and storing information on shipping containers including container location and container load status, the system comprising:

4

a receiving area for receiving containers to be monitored by the system, said receiving area within a defined boundary within which containers are to be monitored by the system,

a container entry point at the boundary at which containers are identified by pre-existing identification codes which are recorded at the container entry point,

a switching vehicle for moving containers to and from a receiving area and to and from a facility within the boundary according to instructions received from the facility, and

means for recording information on locations and load status of containers within the defined boundary.

('789 patent at 9:47-65.)

Claim 9 of the '789 patent recites:

9. A method for monitoring location and load status of shipping containers comprising the steps of:

identifying carriers and containers by identification codes at a point of entry to a facility,

recording identification codes of containers to be monitored,

moving a container from the point of entry to a receiving area and recording the location of the container within the receiving area,

moving a container from a receiving area via a switching vehicle to a final destination according to instructions received from the facility and recording the location of the final destination of the container,

moving the container from the final destination to a receiving area and recording the receiving area location of the container and the status of a load in the container.

('789 patent at 10:30-45.)

Claim 1 of the '291 patent recites:

1. A computerized system for monitoring and recording location and load status of shipping containers relative to a facility with an associated yard defined by a

5

boundary within which containers are to be monitored by the system, and a controlled entry point to the boundary, the system comprising:

> means for recording identification codes of containers which enter the boundary,

> means for communicating and recording information on movements, location and load status of containers within the boundary in response to movement and changes in location and load status of containers made according to instructions received from the facility,

> means for generating reports of recorded information on locations and load status of containers within the boundary, and

> means for generating reports on container locations and load status relative to designated docks associated with a facility.

('291 patent at 18:40-59.)

Claim 32 of the '291 patent recites:

> 32. A method of generating a live unload exception report for monitoring containers intended to be unloaded at a dock of a facility upon arrival at the facility without being first placed in a yard associated with the facility, but which were switched at least once before arriving at a dock, the method comprising the steps of:

> > (a) identifying live unload containers from information received by an advance shipping notice,

> > (b) recording a date and time of arrival of an identified live unload container,

> > (c) recording a date and time of contact with the live unload container by a switcher which flags the container as a live unload exception, and

> > (d) recording a total number of switches of the container before the container arrives at a dock.

('291 patent at 20:52-67.) As the other claims of the Patents are drawn to similar processes, they

suffer from the same infirmity as the representative claims and need not be considered further.

*Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 712 (Fed. Cir. 2014). (Hereinafter *"Ultramercial*

*II''*). The Federal Circuit has held that an extended claim by claim analysis is not necessary where multiple claims are "substantially similar and linked to the same abstract idea." *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1348 (Fed. Cir. 2014); Bilski v. Kappos, U.S. 130 S.Ct. 3218, 3225, 177 L.Ed.2d 792 (2010),* (determining that eleven (11) claims in a patent application were invalidly abstract after only analyzing two (2) of the claims in detail); *CyberFone Sys., LLC v. Cellco P'ship, 885 F.Supp.2d 710, 715 (D.Del.2012)* (invalidating all twenty-four (24) claims of a patent for abstractness after only conducting an analysis of the first claim*); and Glory Licensing LLC,* 2011 WL 1870591 (dismissing three (3) patents containing 121 claims after analyzing only a single claim of a single patent in detail). The "basic character of the claimed subject matter" in dispute in this action is clearly evident to the Court and no further construction of the claims is required.

## C. Patent Eligibility at the Pleading Stage

Courts may properly decide the question of patent eligibility at the pleading stage and without first construing the claim terms. "[C]laim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada* (U.S.), 687 F.3d 1266, 1273. (Fed.Cir.2012). Where appropriate, district courts have adjudicated subject matter eligibility before claim construction. *See, e.g., See Bilski*, U.S., 130 S.Ct. 3218, 177 L.Ed.2d 792*; CyberFone*, 885 F.Supp.2d at 715*; Glory Licensing LLC v. Toys R Us, Inc.,* No. 09–4252(FSH), 2011 WL 1870591 (D.N.J. May 16, 2011)*, appeal dismissed,* 459 F. App'x 916 (Fed.Cir.2011); *DietGoal Innovations LLC v. Bravo Media LLC,* Civ. 13-8391, F.Supp.2d, 2014 WL 3582914, at *16 (S.D.N.Y. July 8, 2014) ("the computerized process disclosed in the '516 Patent is invalid under § 101, under any reasonable construction. Claim construction would not assist the Court in resolving the § 101 claim of invalidity"); *Sinclair–Allison, Inc. v. Fifth*

*Ave. Physician Servs.*, LLC, Civ. 12–360–M, 2012 WL 6629561, at *2 (W.D.Okla. Dec. 19, 2012), aff'd, 530 F. App'x 939 (Fed.Cir.2013) ("there is no requirement that claims construction be completed before examining patentability"). Plaintiff admits that the Court may decide this issue at the pleadings stage. *See* Plaintiff's sur-reply at 4, n.1 ("WMI does not dispute that the Court *has the power* to rule on this issue at this early stage is not in dispute [sic]; the issue at hand is whether it is *appropriate* to do so.")

Courts have indeed dismissed patent suits on the pleadings because the patents were ineligible under § 101. *See, e.g., Lumen View Tech. LLC v. Findthebest.com, Inc.*, 984 F.Supp.2d 189, 205 (S.D.N.Y.2013) (granting judgment on the pleadings because "[t]he claimed process elements of Claim 1 are straightforward. No components are opaque such that claim construction would be necessary to flush out its contours"); *Cardpool, Inc. v. Plastic Jungle, Inc.*, Civ. 12–04182, 2013 WL 245026, *3 (N.D.Cal. Jan. 22, 2013) ("[t]here is no authority for the proposition that a patent may not be deemed ineligible subject matter on a motion to dismiss"); *OIP Technologies, Inc.i v. Amazon.com, Inc.*, C–12–1233, 2012 WL 3985118, at *5 (N.D.Cal. Sept. 11, 2012) ("the procedural posture of this case does not render Amazon's [12(b)(6) ] motion premature").

Patentability is a question of law "that may be informed by subsidiary factual issues." *CyberFone* 885 F.Supp.2d 710, 715 (D.Del.2012) (*citing In re Comiskey*, 554 F.3d 967, 976 (Fed.Cir.2009)). There are no disputed facts that need to be resolved to decide this issue, which is question of law. Although Plaintiff states that at least some claim construction is required, even if the Court construes all claim terms in a manner most favorable to Plaintiff, it would still find that none of the claims survive §101.

**D. Defendant's Burden**

"A patent shall be presumed valid .... The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282(a). Plaintiff argues that Defendants must prove subject matter ineligibility using a "clear and convincing" standard, relying on *Ultramercial, Inc. v. Hulu*, LLC, 722 F.3d 1335, 1342 (Fed. Cir. 2013) cert. granted, judgment vacated sub nom. ("Ultramercial I"). Defendants then properly identified that *Ultramercial*, has since been vacated by the Supreme Court, and the Federal Circuit's majority did not re-address this standard. However, in his concurring opinion Judge Mayer stated:

> The rationale for the presumption of validity is that the United States Patent and Trademark Office ("PTO"), "in its expertise, has approved the claim." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007). That rationale, however, is "much diminished" in situations in which the PTO has not properly considered an issue. *Id.* Because the PTO has for many years applied an insufficiently rigorous subject matter eligibility standard, no presumption of eligibility should attach when assessing whether claims meet the demands of section 101.

> ***

> Although the Supreme Court has taken up several section 101 cases in recent years, it has never mentioned—much less applied—any presumption of eligibility. The reasonable inference, therefore, is that while a presumption of validity attaches in many contexts, *see Microsoft Corp. v. i4i Ltd. P'ship*, U.S. 131 S.Ct. 2238, 2243–47, 180 L.Ed.2d 131 (2011), no equivalent presumption of eligibility applies in the section 101 calculus.

*Ultramercia II,* F.3d 709, 720-21 (Fed. Cir. 2014). With no authoritative law binding the Court as to an applicable standard, the Court adopts Judge Mayer's approach and will not afford Plaintiff's Patents the presumption of subject matter eligibility.

While the patent may be presumed valid as required by 35 U.S.C. § 282(a), its subject matter will not be afforded a presumption of eligibility at this stage of the litigation. The Court is cognizant that "claim construction is not an inviolable prerequisite to a validity determination

under § 101" but "will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., L.L.C.* (U.S.), 687 F.3d 1273–74. However, for the Court to apply a "clear and convincing" standard as to subject matter eligibility at the motion to dismiss stage, the Court would effectively create a near impossible threshold for a defendant to clear when assessing a patent's subject matter under the test articulated by *Alice*. Judge Mayer noted, "[f]rom a practical perspective, addressing section 101 at the outset of litigation will… conserve scarce judicial resources," as well as, provide a deterrent "against vexatious infringement suits." *Ultramercial II* at 719. By imposing a "clear and convincing" standard, the practical effects of addressing section 101 at the outset of litigation would be defeated by a Plaintiff who merely asserts that the court should differentiate any claim in the patent at issue from a representative claim proposed by the Defendant. "Failure to recite statutory subject matter is the sort of "basic deficiency," that can, and should, "be exposed at the point of minimum expenditure of time and money by the parties and the court[.]" *Id.* (*citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 558, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). With that legal framework at hand, the Court now turns its analysis to Plaintiff's patents under the purview of *Alice* and *Mayo*.

**E. §101**

Section § 101 states: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title." The statute is to be given a "wide scope." *Bilski,* U.S. 130 S.Ct. 3218, 3225, 177 L.Ed.2d 792 (2010) (*quoting Diamond v. Chakrabarty,* 447 U.S. 303, 308, 100 S.Ct. 2204, 65 L.Ed.2d 144 (1980)).

The Supreme Court has delineated three exceptions to Section 101's "broad patent-eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.' " *Id.* (*quoting Chakrabarty,* 447 U.S. at 309).

The abstract-idea exception precludes patents that "would pre-empt use of [a particular] approach in all fields, and would effectively grant a monopoly over an abstract idea." *Bilski,* 130 S.Ct. 3218, 3231 (2010). For example, "[a] mathematical formula as such is not accorded the protection of our patent laws, and this principle cannot be circumvented by attempting to limit the use of the formula to a particular technological environment." *Diamond v. Diehr,* 450 U.S. 175, 184, 101 S. Ct. 1048, 1055, 67 L. Ed. 2d 155 (1981*) (citations omitted). "Similarly, insignificant post-solution activity will not transform an unpatentable principle into a patentable process." *Id.* at 191–92. "[M]ethods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas ...." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed.Cir.2011). By contrast, "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Diehr,* 450 U.S. at 1057. (emphasis in original).

The Supreme Court most recently examined the abstract-idea exception in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347 (2014), particularly as that exception applies to computer-implemented schemes, and clarified the test that courts must apply. The Supreme Court identified a two-part analysis for distinguishing patents that claim abstract ideas from those that claim patent-eligible applications of abstract ideas. In *Alice,* the Supreme Court identified a "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id.* at 2355 (*citing Mayo*, 132 S.Ct. at 1296–97). "First, we determine whether the claims at issue are

11

directed to one of those patent-ineligible concepts." *Id.* If not, the claims pass muster under §

101. Then, in the second step, if we determine that the claims at issue are directed to one of those

patent-ineligible concepts, we must determine whether the claims contain "an element or

combination of elements that is 'sufficient to ensure that the patent in practice amounts to

significantly more than a patent upon the [ineligible concept] itself.' " *Id. (quoting Mayo,* 132

S.Ct. at 1294)

Defendants argue that Plaintiff's patents are, on their face, invalid as a matter of law

under 35 U.S.C. § 101. Defendants move to dismiss Plaintiff's Complaints because, Defendants

contend, the Patents Plaintiff is asserting against Defendants are directed to abstract ideas, which

are ineligible for protection under Section 101. Defendants contend that the subject matter of the

'789 patent and the '291 patents represent precisely the kind of abstract ideas to which §101,

along with the relevant case law, apply to ensure that such ideas remain in the public domain.

Defendants state that the claims within the patents themselves are linked to the same underlying

abstract idea: monitoring locations, movements, and load status of shipping containers within a

container receiving yard, and storing, reporting and communicating this information in various

forms. Defendants stress that the claims are limited to general steps and means for recording

information that could be carried out by human memory, by hand, or by general purpose

computer and printing resources.

Defendants point out that in Claims 9 to 19 of the '789 Patent and Claims 21 to 35 of the

'291 Parent, the claims include no field of use limitations requiring the use of a computer or

device at all. Defendants assert that the subject matter of the claims could be performed with

wholly human skill and human memory or by the use of a pencil and paper. Defendants argue

that the claims in Plaintiff's patents are anticipatory of vast areas of ordinary shipping, container monitoring, and information management that have long been part of the public domain.

Moreover, Defendants state that Plaintiff's patents do not include any additional features that qualify as "inventive concepts" sufficient to "transform the claim abstract idea into a patent eligible application." Defendants note that although several of the claims recite specific elements that implement the abstract idea, they point out that elements that merely require generic computer implementation and provide no additional, inventive, transformative concept are not sufficient to confer patent eligibility.

Plaintiff responds to Defendants' arguments by stating that it would be premature for the Court to invalidate Plaintiff's patent at the pleading stage. Plaintiff cites case law for the proposition that dismissals for lack of eligible subject matter should be the exception, not the rule. Plaintiff states that claim construction may be necessary for the Court to invalidate the patents, and the accompanying material to conduct proper claim construction is not before the Court at this time. Plaintiff argues that the Patents-in-suit arguably include several "means-plus-function" claims, which requires the Court to study the Patent's specification and prosecution history. Plaintiff asserts that this is a necessary exercise before deciding the present §101 issue.

Plaintiff argues that while Defendants ask the Court to rule that every single claim of each patent is invalid, Defendants do not provide analysis for each claim for the Court to consider. Instead, Plaintiff contends, Defendants summarily conclude that the "claims are substantially similar" but offer no explanation of how they are purportedly similar, beyond referencing Defendants' misleading chart titled, "description of coverage" of the claims. Plaintiff argues that Defendant's attempt to generalize the patents and failure to consider each and every claim is a failure to meet their burden of clear and convincing proof. Moreover, Plaintiff asserts

13

that the method claims in the patents are not simply mental processes, but rather that plausible constructions exist which show that steps in the Patents' claims require machines.

We agree with Defendants that claims of the '789 and the '291 Patents are directed to the same abstract idea: monitoring locations, movement, and load status of shipping containers within a container-receiving yard, and storing, reporting and communicating this information in various forms through generic computer functions. Plaintiff's arguments that the patent claims are not abstract because they require physical steps and include the use of tangible components is beside the point; the claims merely recite the abstract idea of monitoring the location and load status of containers in a yard. *See Alice*, 134. S. Ct. 2347, 2358 (2014) ("The fact that a computer necessarily exist[s] in the physical, rather than purely conceptual, realm...is beside the point.")

We first examine the claims because the claims are the definition of what a patent is intended to cover. An examination of the claim limitations of the '789 patent show that claim 1 includes a system for monitoring shipping containers. Without purporting to construe the claim, the claim recites the bounds of the area in which the containers are monitored, recorded and the means by which they are moved. Plaintiff argues that claim 1 is not limited to the idea of monitoring containers in the abstract, but rather it specifies details of how the monitoring is done, including the use of tangible components. Plaintiff further points to the use a physical "entry point" and the use of "switching vehicles" reflect that the monitoring takes place in a concrete, real world application, not as an abstract idea. Moreover, Plaintiff states that the claim arguably contains a means-plus-function term ("means for recording") which includes all physical structures used to carry out the function of recording information, such as data input terminals at the entry point, switching vehicles, optical scanners, a mainframe computer hosting

14

a database, and any required network connections. Despite Plaintiff's contentions, the *Alice* court stated:

> There is no dispute that a computer is a tangible system (in § 101 terms, a "machine"), or that many computer-implemented claims are formally addressed to patent-eligible subject matter. But if that were the end of the § 101 inquiry, an applicant could claim any principle of the physical or social sciences by reciting a computer system configured to implement the relevant concept. Such a result would make the determination of patent eligibility "depend simply on the draftsman's art," *Flook*, supra, at 593, 98 S.Ct. 2522, thereby eviscerating the rule that " '[l]aws of nature, natural phenomena, and abstract ideas are not patentable,' " *Myriad*, 569 U.S. 133 S.Ct., at 2116.

*Alice* at 2358-59. Although Plaintiff is correct that claim incorporates tangible components into the monitoring system, this is not enough for the system to become patent-eligible subject matter. *See Ultramercial II* 772 F.3d 709, 715 (Fed. Cir. 2014) ("Although certain additional limitations, such as consulting an activity log, add a degree of particularity, the concept embodied by the majority of the limitations describes only [an] abstract idea...") Despite Plaintiff's contentions, Claim 1 articulates nothing more than the process of monitoring, recording, sorting, communicating, and generating information regarding shipping containers in a shipping yard. These are all abstract ideas themselves.

A further examination of the '789 patent shows that claim 9 includes 5 steps for monitoring the location and load status of shipping containers. Without purporting to construe the claims, the steps include: (1) identifying the carriers and containers by an ID code; (2) recording the ID code of the monitored container; (3) moving and recording the movement of the container from a storage area to a receiving area; (4) moving the container from the receiving area to a vehicle to the final destination and recording the relevant information; and (5) moving the container from the final destination to receiving area and recording the relevant information. ('789 patent at 10:30-45.)

This ordered combination of steps recites an abstraction—an idea, having no particular concrete or tangible form; the process of monitoring and moving shipping containers and collecting the relevant data as to the location of the shipping containers. Plaintiff argues that because this claim covers a method of "moving" containers, as well "monitoring" them before they have to be moved, this does not constitute a mental process and does not fit into any of the judicial exceptions to §101. However, the Federal circuit has articulated that the mere presence of a physical step to collect data will not render a claim patent eligible. *In re Grams*, 888 F.2d 835, 840 (Fed. Cir. 1989); *Bilski*, 561 U.S. 593, 611 (2010). Here, Claim 9 is reflecting nothing more that the abstract process of monitoring and moving shipping containers and collecting the relevant data as to the location of the shipping containers.

An examination of the claim limitations of the '291 patent shows that claim 1 includes a computerized system for monitoring and recording location and load status of shipping containers relative to a facility. Without purporting to construe the claim, the claim recites that the system comprises the means for recording the identification codes of the containers, communicating the movements of the containers, and generating reports of the recorded information regarding the containers. While Plaintiff argues that the claim is not abstract because it includes the use of tangible components, the Court has already noted that an abstract idea is not rendered patentable just because of connections to the physical world. *Alice*, 134 S. Ct. at 2358. It is apparent to the Court that this claim is limited to general steps and means for monitoring, recording, sorting, communicating and generating location and load status information, which could be carried out by human memory, by hand, or by conventional equipment and general purpose computer and printer resources. *CyberSource*, 654 F.3d at 1372.

Finally, a further examination of the '291 patent shows that claim 32 includes steps for generating a report for monitoring containers to be unloaded without first being placed in a yard at the container facility. Without purporting to construe the claims, the steps include: (1) identifying the containers to be unloaded; (2) recording the date and time of the arrival of the container; (3) recording the date and time of contact with a switching vehicle; and (4) recording the total number of times a container has been switched before arriving at the dock. ('291 patent at 20:52-67.)

This ordered combination of steps recites an abstraction—an idea, having no particular concrete or tangible form; the process of inputting data in a computer for the purpose of generating a report regarding container without first being placed in a yard at the container facility. As previously noted, while Plaintiff argues that the claim is not abstract because it includes the use of tangible components, such as a mainframe computer, the Court has already noted that an abstract idea is not rendered patentable just because of connections to the physical world. *Alice*, 134 S. Ct. at 2358. Moreover, the Federal circuit has articulated that the mere presence of a physical step, such as inputting information into a computer, to collect data, will not render a claim patent eligible. *In re Grams*, 888 F.2d 835, 840 (Fed. Cir. 1989); *Bilski*, 561 U.S. 593, 611 (2010). Here, Claim 32 recites nothing more than the abstract process of inputting data in a computer for the purpose of generating a report regarding container without first being placed in a yard at the container facility.

The second step in the analysis requires us to determine whether the claims do significantly more than simply describe that abstract method. *Mayo*, 132 S.Ct. at 1297. We must examine the limitations of the claims to determine whether the claims contain an "inventive concept" to "transform" the claimed abstract idea into patent-eligible subject matter. *Alice*, 134

17

S.Ct. at 2357 (*quoting Mayo,* 132 S.Ct. at 1294, 1298). The transformation of an abstract idea into patent-eligible subject matter "requires more than simply stat[ing] the [abstract idea] while adding the words 'apply it.' " *Id.* (*quoting Mayo,* 132 S.Ct. at 1294) (alterations in original). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].' " *Id.* (*quoting Mayo,* 132 S.Ct. at 1297) (alterations in original). Those "additional features" must be more than "well-understood, routine, conventional activity." *Mayo,* 132 S.Ct. at 1298.

We conclude that the limitations of the '291 and the '789 patents do not transform the abstract idea they recite into patent-eligible subject matter because the claims simply instruct the practitioner to implement the abstract idea with routine, conventional activity. *Ultramercial II* at 715. None of the 5 steps in claim 9 of the '789 patent or the 4 steps in claim 32 of the '291 patent, viewed "both individually and 'as an ordered combination,' " transform the nature of the claim into patent-eligible subject matter. *See Alice,* 134 S.Ct. at 2355 (*quoting Mayo,* 132 S.Ct. at 1297, 1298). The majority of these steps comprise the abstract ideas of the process of monitoring and moving shipping containers and collecting the relevant data as to the location of the shipping containers, and the process of inputting data in a computer for the purpose of generating a report regarding container without first being placed in a yard at the container facility, respectively. Adding routine steps of recording, identifying, and communicating the ID code of a particular container, or moving the container from the receiving area to a vehicle does not transform an otherwise abstract idea into patent-eligible subject matter. Instead, the claimed sequence of steps comprises only "conventional steps, specified at a high level of generality," which is insufficient to supply an "inventive concept." *Id.* at 2357 (*quoting Mayo,* 132 S.Ct. at 1294, 1297, 1300). Indeed, the steps of monitoring, recording, and inputting information represent insignificant

"data-gathering steps," *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed.Cir.2011), and thus add nothing of practical significance to the underlying abstract idea.

The claims' invocation of a computer also adds no inventive concept. While the Supreme Court has held that the machine-or-transformation test is not the sole test governing § 101 analyses, *Bilski*, 561 U.S. at 604, 130 S.Ct. 3218, that test can provide a "useful clue" in the second step of the *Alice* framework, *see Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1278 (Fed.Cir.2012) (holding that the machine-or-transformation test remains an important clue in determining whether some inventions are processes under § 101), cert. denied, 573 U.S. ——, 134 S.Ct. 2870, 189 L.Ed.2d 832 (2014). A claimed process can be patent-eligible under § 101 if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *In re Bilski*, 545 F.3d 943, 954 (Fed.Cir.2008) (en banc), aff'd on other grounds, *Bilski*, 561 U.S. 593, 130 S.Ct. 3218.

The claims of the '789 and '291 patents, however, are not tied to any particular novel machine or apparatus, only a general purpose computer, general communication devices, and general vehicles. As the Supreme Court has previously held, adding a computer to otherwise conventional steps does not make an invention patent-eligible. *Alice*, 134 S.Ct. at 2357. Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis. Moreover, storing and querying information in a database based upon that information, is one of the most basic function of a database system. *Id.* at 2359. ("[E]lectronic recordkeeping" is "one of the most basic functions of a computer.") Although several claims recite specific system elements, these elements merely require generic computer functions that are not inventive.

19

The claims of the '789 and '291 patents also fail to satisfy the transformation prong of the machine-or-transformation test. The methods as claimed refer to a system for monitoring shipping containers and a computerized system for monitoring and recording location and load status of shipping containers relative to a facility. These ordered steps for recording and inputting relevant information as to shipping containers cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances." *Bilski*, 545 F.3d at 963. Nowhere does the patents tie the claims to a novel machine. We therefore hold that the claims of the '789 and '291 patents do not transform any article to a different state or thing. While this test is not conclusive, it is a further reason why the claims of the '789 and '291 patents do not contain anything more than conventional steps relating to monitoring, recording and inputting relevant information as to shipping containers at a container facility. Therefore, the Court holds that the '789 and '291 patens do not cover patent-eligible subject matter. [1]

## IV. CONCLUSION

Because the '789 and '291 patent claims are directed to no more than a patent-ineligible abstract idea, we **GRANT** Defendant Maher Terminals, LLC and Defendant Global Terminal & Container Services, LLC's motions to dismiss.

An appropriate order accompanies this Opinion.

---

[1] In the alternative, the Court would most likely find that Plaintiff's Complaints satisfy the *Twombly* and *Iqbal* pleading standard. The fact that Plaintiff filed nearly identical complaints in other districts against other parties does not necessarily mean these Complaints fail to comply with *Iqbal* and *Twombly*. Plaintiff's Complaints sufficiently identify the accused product. Plaintiff is not required to identify the accused product by trade name; rather, identification of the product category is sufficient. Defendants' motions seek to dismiss Plaintiff's indirect infringement claims in its Complaints, but Plaintiff does not allege indirect infringement claims in its Complaints, (though they reserved their right in the future). Even if the Court finds that Plaintiff's Complaints are deficient, it would most likely grant Plaintiff leave to amend.

Date: April ____, 2015

Jose L. Linares
Unites States District Judge